## Ford v. House-Hasson Hardware Company; Same v. Jellico Grocery Company.

(Decided June 19, 1914.)

### Appeals from Bell Circuit Court.

Continuance—Error of Court in Refusing.—In an action against appellant and his co-defendant, Murray, sureties in a guaranty

to appellees for the payment of certain sums for goods furnished to a bankrupt coal company, Murray being absent and not before the court, upon a plea of payment by appellant who was an accommodation surety, and an affidavit showing diligence to procure the attendance of Murray at the trial, such a showing for a continuance was made as that it was error of the court to refuse it.

T. G. ANDERSON for appellant.

PATTERSON & INGRAM, W. E. CABELL, and TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

As we view this record the chief question is whether the trial court erred in refusing the continuance requested by defendant Ford. The same question is involved in both appeals, and they are therefore considered together.

The Sagamore Coal Company was operating a mine in Bell county, and appellant, Ford, and W. T. Murray were large stockholders, and evidently very much interested in its success. In connection with the coal mine, the company operated a commissary, or a store stocked with general merchandise. In 1911 the company was slow, and getting behind in payment of its debts, and owed more than $2,000 to each of the appellees. On the 23rd day of March 1911, in order to secure for the coal company an extension of time, and a further line of credit the coal company, with appellant and Murray as sureties, executed to each of the appellees similar writings. One is as follows:

"For and in consideration of the sum of One Dollar to the subscribers in hand paid by the House-Hasson Hardware Company, the receipt whereof is acknowledged, and for the further consideration that said House-Hasson Hardware Company, incorporated, have sold and delivered or shall sell and deliver unto Sagamore Coal Company, Goods, Wares and Merchandise on credit, we do hereby jointly and severally guarantee the payment to the said House-Hasson Hardware Co., Inc., for all goods, wares and merchandise as sold and delivered, and for interest on all said accounts or sales, at the rate of 6 per cent per annum after maturity.

"This guaranty shall extend to all sales of goods, wares and merchandise made by the House-Hasson Hardware Company, Inc., to the said Sagamore Coal Company, and shall continue in effect until notice of its dis-

continuance as to further liability therein is given by the subscribers in writing to the said House-Hasson Hardware Co., Inc., but the liability of the subscribers under this guarantee shall not exceed the sum of $3,500 (Three Thousand Five Hundred Dollars) and we do also waive notice of purchase and maturity of bills.

From this writing it will be seen that W. T. Murray, and R. C. Ford, appellant, guaranteed to the extent of $3,500, the payment of all past due accounts as well as sales thereafter, and agreed that·the guaranty should continue in effect until notice of its discontinuance be given in writing. In the other case, notice of discontinuance was not necessarily in writing. In other respects the obligations in each case were the same, except the name of the company to whom the guaranty was given, and the limit of liability. To the House-Hasson Hardware Company it was stipulated that the liability should not exceed $3,500, and to the Jellico Grocery Company $3,000.

On the 15th day of April, 1913, the appellees filed suits against Murray and Ford, as joint defendants, on the guaranty above referred to. At that time the total indebtedness of the Coal Company to appellee, House-Hasson Hardware Company was $5,084.84, and to the Jellico Grocery Company $6,617.36. The claim against Murray and Ford was the limited liability, however, fixed in the writings, viz.: $3,500 by the House-Hasson Hardware Company, and $3,000 by the Jellico Grocery Company.

The petitions show that Murray and Ford were the chief stockholders and officers in the coal company, and that Murray was President. Murray had moved out of the State when the suits were filed, and was never brought before the court. On May 17th Ford filed his answer. At the same time he moved to make the petition more specific, and asked for an itemized statement showing all bills of merchandise purchased by the coal company going to make up the claim, together with all payments made thereon. The court granted this last request, and itemized statements of account were filed, and in each case they showed that from the time the guaranty was executed until the suit was instituted the coal company had made payments in excess of the guaranty. Ford's answer tacitly admitted the guaranty, but denied any liability on account of it. He also denied that he was an

officer or director of the company at the times mentioned, and in the second paragraph he pleaded payment in the following terms:

"Defendant further says that he and his co-defendant, W. T. Murray, have paid plaintiff out of their personal funds on account of the indebtedness set forth in its petition the sum of three thousand ($3,000) dollars and defendant pleads the same in full satisfaction and discharge of the written instrument sued upon by plaintiff."

On June 17th the court overruled demurrer to this second paragraph of defendant's answer, and the cause was set for trial July 1st. On the trial date Ford was not ready because of absence of co-defendant, Murray, and filed affidavit and motion for continuance. The court passed the motion and set the case down for July 12th. On that day Ford renewed his motion for continuance with affidavit, and to which plaintiff filed a counter affidavit. The court refused a continuance. The case proceeded to trial, Ford waiving intervention of a jury, and on the 14th, judgments were entered against him for the amounts claimed in the petitions.

There is serious question as to the sufficiency of Ford's plea of payment and satisfaction of the written guaranty, but the lower court ruled that the facts stated were sufficient to constitute a defense. Whether we concur in that ruling is not of so much importance now. Manifestly the liability against Ford and Murray continued until it was satisfied by payment, and appellees had notice that Ford and Murray would not further serve as guarantors. The answer is susceptible of two constructions. It avers a satisfaction by payment of the indebtedness set forth in the petition. Whether this refers to the debt of the Coal Company or Ford's obligation as guarantor is not clear. If it referred to the coal company's indebtedness and a payment thereon of the amount stated the answer was insufficient. As we construe the writing, it was a continuing obligation, and its main purpose was to procure a line of credit for the coal company. More than a mere payment on the company's account to appellees was required. The payment must have been in discharge and termination of the guaranty obligation and with notice to that effect. The court should have required an answer of Ford in more definite terms, or else sustained demurrer.

But in view of the ruling on the sufficiency of the plea, there was no occasion for Ford to amend it with more

definite allegations in this regard, and the question resolves itself down to whether, under the circumstances disclosed in the affidavit, there was not an abuse of discretion in refusing a continuance so that Ford might be given an opportunity to procure the personal attendance, or deposition of his co-defendant, Murray, to establish the facts alleged in defense. It appears from the affidavit that as soon as his answer was held to be a valid plea, viz.: May 17th; he undertook to locate Murray for the purpose of procuring his attendance or taking his deposition, and details the method pursued. On June 26th, he received a letter from Murray dated Chattanooga, Tennessee, June 24th, giving absence from home as the reason for his failure to make earlier reply, and expressing a willingness to give his deposition, but stated that his engagements were such that he could not possibly attend the trial. On further insistence from Ford that he attend in person, Murray wrote on June 28th, among other things, the following:

"I have just written the Judge and told him that it was absolutely impossible for me to be there. I was in Cincinnati the first of the week, got overheated and am not well enough to make this trip; couldn't do it under any circumstances."

When the case was set over from July 1st to July 12th Ford got into communication with Murray by telephone, and Murray informed him that in order to testify intelligently it would be necessary for him to investigate the books and accounts of the company, and that because of his continued illness he would be unable to do that, or to testify by deposition, or attend the court at the time the case was set for trial. Murray also said he would send certificate of his attending physician showing his illness, and that as Murray was also a lawyer, he relied upon him to have the certificate conform to legal requirements. On July 11th, one day before the trial, Ford received the following medical certificate:

"I, Dr. K. D. Davis, of Chattanooga, Tenn., do certify that I am the family physician of W. T. Murray, of this city. Mr. Murray has been indisposed since June 28th, 1913, from being badly overheated. He is in no condition for business, should not be exposed to any kind of worry or excitement. I have directed that he avoid the heat, all business, excitement and worry.

K. D. Davis, M. D."

It is insisted that because the certificate is not sworn to it is not sufficient. Appellee also files a counter affidavit from which it is made to appear that Murray was not ill, and in support of the contention, filed a letter signed by a legal firm at Chattanooga dated July 9th in which they say that Murray was at that time in the city, and was then in his office, which was in the same building wherein these lawyers had their office, and that they had just been to see Mr. Murray in his office, and from their observation and the manner of his conversation, they were satisfied he was in good physical condition, and that there was no legitimate reason why he would be unable to give his deposition. Assuming that a counter affidavit was permissible, this letter was not in the form of an affidavit, and it is subject to the same criticism as the medical certificate. It may be that Murray was feigning illness, and that the certificate of the Chattanooga physician was untrue, and it was for that reason he did not verify it, but under the circumstances disclosed in Ford's affidavit, we would not feel warranted in making that presumption. Murray was Ford's co-defendant; he was President of the bankrupt coal corporation, and attended to its business in every detail. Ford says the payments were made by Murray in satisfaction of the indebtedness, and that Murray will so swear. Appellee admits that payments were made in excess of the guaranty. It is evident that Ford believed they were made in satisfaction and termination of the guaranty, and that he could establish that fact with Murray's testimony. In view of the heavy obligation imposed upon this accommodation surety, and the diligence disclosed in the affidavit to secure the attendance of the absent witness and co-defendant, we are of opinion that the case should go back for a new trial on the issues suggested herein.

The judgment in each case is therefore reversed.